UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ELOUISE BRADLEY,

          Plaintiff,

                                  Case No. 20-cv-661-pp

    v.

WISCONSIN DEPARTMENT OF CHILDREN AND FAMILIES,
MUSTEFA SABREE, JENNIFER SABREE,
JANE ABSHIRE, REBECCA MCFADDEN
and CINDA K. STRICKER,

          Defendants.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR HEARING AND MOTION FOR ORDER TO SHOW CAUSE (DKT. NO. 12), GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 9) AND DISMISSING CASE**

---

On April 24, 2020, Elouise Bradley filed a complaint under 42 U.S.C §1983 against defendants the Wisconsin Department of Children and Families (DCF) and five individual defendants. Dkt. No. 1 at 1, 4. The plaintiff claims that the defendants violated her "right to be free from *ex post facto* punishment under Article I, Section 10" of the United States Constitution, as well as "to be free from deprivation of property without procedural . . . and substantive due process under the Fourteenth Amendment." Id. at 4. The plaintiff paid the filing fee when she filed the complaint.

The defendants have filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. Dkt. No. 9. The plaintiff filed what appears to be a response in opposition. Dkt. No. 12.

1

# I. Procedural History

The plaintiff filed this lawsuit on April 24, 2020. Dkt. No. 1. It is the fifth brought by the plaintiff in this court and all five lawsuits relate to her desire to run a daycare and her preclusion (perceived or actual) from doing so. See Bradley v. Wis. Dept. of Children and Families, 528 F. Appx. 680 (7th Cir. 2013) (Bradley I); Bradley v. Sabree, 594 F. Appx. 881 (7th Cir. 2015) (Bradley II); Bradley v. Sabree, 842 F.3d 1291 (7th Cir. 2016) (Bradley III); Bradley v. Wis. Dep't of Children and Families, 715 F. Appx. 549 (7th Cir. 2018) (Bradley IV). The prior four cases were dismissed by the district courts and the Seventh Circuit Court of Appeals affirmed all four dismissals. The plaintiff's appeal in Bradley III resulted in the appellate court warning the plaintiff that "submitting further frivolous appeals to this court may result in sanctions." Bradley v. Sabree, 842 F.3d 1291, 1293 (7th Cir. 2016).

In Bradley IV, the Seventh Circuit did what it had warned it would do. First, the court summarized the history of the plaintiff's litigation:

> In the past five years [the plaintiff] has lost three appeals in suits accusing some or all of the defendants in this case of violating her constitutional rights by revoking her daycare license. *Bradley v. Sabree*, 842 F.3d 1291 (7th Cir. 2016) (*Bradley III*); *Bradley v. Sabree*, 594 Fed. Appx. 881 (7th Cir. 2015) (*Bradley II*); *Bradley v. Wisconsin Department of Children & Families*, 528 Fed. Appx. 680 (7th Cir. 2013) (*Bradley I*). In her first appeal, we affirmed the dismissal of her suit against the Wisconsin Department of Children and Families because it is not a "person" under § 1983. *Bradley I*, 528 Fed. Appx. At 681. In her second appeal, a suit against the same employees she names in this suit, we affirmed the district court's dismissal for failure to state a claim and for lack of jurisdiction. *Bradley II*, 594 Fed. Appx. At 883. Her third go-around was a repeat of the first suit, and we affirmed the dismissal because the suit was barred by claim preclusion. *Bradley III*, 842 F.3d at 1293.

2

In this fourth appeal we again confront a district court's order dismissing [the plaintiff's] claims against the same defendants for the same alleged wrongs. Although we construe [the plaintiff's] brief liberally, *Anderson v. Hardman*, 241 F.3d 544 (7th Cir. 2001), we cannot glean a meaningful argument challenging the district court's resolution of the lawsuit. Claim preclusion bars most of [the plaintiff's] theories because they involve the same parties and the same core of operative facts as her prior suits, which ended with a final judgment on the merits in the defendant's favor. See *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013); *Ross v. Board of Education of Township High School District 211*, 486 F.3d 279, 283 (7th Cir. 2007). As for the new defendants, [the plaintiff] does not assert any coherent claim against them.

[The plaintiff] contends that the district judge is biased against her and should not have decided the case. The adverse decisions are the only reason she thinks the judge biased, but the best explanation of the decisions is that the judge sincerely thinks the claims unavailing. Prior adverse decisions do not disqualify a judge. See *Liteky v. United States*, 510 U.S. 540 . . . (1994).

Bradley v. Wis. Dep't of Children and Families, 715 Fed. Appx. at 550.

The Seventh Circuit then sanctioned the plaintiff.

We have warned [the plaintiff] that further frivolous appeals may result in penalties. *Bradley III*, 842 F.3d at 1293. She disregarded our warning. Two penalties are appropriate. First, by pursuing a frivolous course of litigation [the plaintiff] has forfeited her privilege of litigating without prepaying of fees (that is, suing *in forma pauperis*) under 28 U.S.C. § 1915. See *Martin v. District of Columbia Court of Appeals*, 506 U.S. 1 . . . (1992). Second, we fine her $1,000 and enter an order under *Support Systems International, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995). Until she pays that fine she is barred from filing papers in any federal court within this circuit except for the defense of criminal cases or applications for writs of habeas corpus. [The plaintiff] may submit to this court, no earlier than two years from the date of this order, a motion to modify or rescind this order. And even if she pays the $1,000 fine, she must pay all required filing fees in her future cases. (That is to say, these two penalties are cumulative, not alternative.)

Id.

3

The court contacted the Seventh Circuit and learned that on April 7 and April 14, 2020—days before filing this lawsuit—the plaintiff paid the $1,000 sanction it had imposed in <u>Bradley IV</u> and lifted the filing bar. (The plaintiff still is barred from proceeding without prepaying the filing fee.)

## II.    **Allegations in the Complaint**

The complaint alleges that the individual defendants violated the plaintiff's civil rights. Dkt. No. 1 at 2. She says that in September 2011, defendant Cinda[1] K. Stricker sent the plaintiff a letter to let her know that Jane "Ashire"[2] would "be [the plaintiff's] new licensing." <u>Id.</u> She asserts that in April 2012, she received her new two-year license and cleared her background check. <u>Id.</u> It appears that the plaintiff completed several training programs in May and June of 2012. <u>Id.</u>

The complaint states, "Mustefa Sabree and Jennifer Sabree, made be relationed because he knows about the 2004 case that was close but was reopened 2012. And Jennifer was informed that [the plaintiff] abuse [her] son in the year 2012 but was unsubstantiated 10/17/2012." <u>Id.</u> at 3.

The plaintiff alleges that on July 17, 2012, Jane "Abshire" "emailed DCF MB (Child Care Fraud) also Jennifer Sabree, and to DCF Cinda K. Stricker." <u>Id.</u> at 2. She asserts that on July 24, 2012, Jennifer Sabree and Jane

---

[1] The plaintiff sometimes refers to this defendant as "Cinda" and sometimes as "Cindy."

[2] In the caption of the complaint, the plaintiff spells the last name "Abshire." Dkt. No. 1.

4

Abshire/Ashire came to her home "during un-hours of operator for the summer" because the plaintiff became ill "due to the heat alert and Family Mental illness." Id. at 3. The plaintiff says,

> In other what I am trying to said I thought my daughter try to commit suicide had a appointment on July 24, 2012 and my adoption son age 10 was seen by the same doctor on July 25, 2012. Mustefa Sabree was assign to this case in 2-23-2004. He was than adoption on by Elouise Bradley on June 15, 2005 and his last name was change from Austin to Bradley. and the other son was adoption on Jan. 14, 2004 and his last name was change from Graun to Bradley.

Id. at 3.

The plaintiff asserts that on August 11, 2012, Jennifer Sabree emailed Jane "Abshire" and Cinda K. Stricker a "fabrication" that the plaintiff voluntarily closed her "center"—presumably her day care center—on July 24, 2012 "and Cinda was trying to find out why my case was re-open." Id.

The complaint then turns to March 18, 2018, the date on which the plaintiff says that the "district court"[3] sanctioned her for two years until March 20, 2020. Id. She says that she took this "problem" to Children's Court "and that when the court notified DCF and they took [her] case seriously and [she] email all document's to Mary Burke attorney for DCF as [she] was told to do." Id. The plaintiff says that the "district court" also fined her $1,000. Id.

In the section of the complaint titled "Relief Wanted," the plaintiff states the following:

---

[3] As noted above, it was the Seventh Circuit Court of Appeals that sanctioned the plaintiff, not the district court.

5

Defendants are liable to Plaintiffs under 42 U.S.C. § 1983 for the violation, under color of state law, of the constitutional right to be free from any ex post facto punishment under Article I, Section 10 and to be free from deprivation of property without procedural procedural and substantive due process under the Fourteenth Amendments to the United States Constitution. Jan. 9, 2009 Retroactive a law the look backward . . . . Wisconsin act 76 permanently bar all individuals convicted of "FRAUDULANT ACTIVITY as a participant in the Wisconsin Works program "from obtaining a child-care license or certification, or from simply working as a caregiver. Both the United States and Wisconsin constitutions prohibit ex post facto laws. On July 17, 2012 I was overpay $14.31 but was paid in full on July 11, 2011. I want this court to order the defendant to clear my name. No Bill of Attainder or Ex post Law shall be passed. Due Process violated the Ex post Law.

Id. at 4.

### III.    Motion to Dismiss (Dkt. No. 9)

The defendants argue that the court must dismiss the case under Fed. R. Civ. P. 12(b)(1) because the court lacks subject matter jurisdiction to adjudicate the claims. Dkt. No. 10 at 3, 11. They also argue that the court must dismiss under Fed. R. Civ. P. 12(b)(6) because the complaint fails to state a claim upon which relief can be granted. Id. at 3-11.

### A.    Subject Matter Jurisdiction

The plaintiff marked the box on the complaint indicating that the court has subject matter jurisdiction under 28 U.S.C. §1331—"federal question" jurisdiction. Dkt. No. 1 at 4.

The plaintiff says that the defendants violated her civil rights under 42 U.S.C. §1983. As for the civil rights she claims the defendants violated, the plaintiff mentions in her prayer for relief the Ex Post Facto Clause and a "bill of attainder." Article I, Section 10, Clause 1 of the U.S. Constitution prohibits

6

states from, among other things, passing "any Bill of Attainder" or "ex post facto Law." She also claims that the defendants violated her right to be free from deprivation of her property and due process under the Fourteenth Amendment.

As the defendants note, it is difficult to figure out what the plaintiff believes the defendants did to violate her civil rights under the Ex Post Facto Clause or the Due Process Clause. She mentions a case in 2004, though she does not explain what that case was about. She mentions an unsubstantiated allegation that she abused her son in 2012. She mentions two of the defendants visiting her home during non-business hours in the summer of 2012. She mentions an email from one defendant to two others, containing a "fabrication" that she voluntarily closed her "center" in 2012. She says she wants the court to clear her name.

The closest the plaintiff comes to stating some sort of claim is in her prayer for relief, where she states that "Wisconsin Act 76" permanently bars individuals convicted of fraudulent activity as participants in the Wisconsin Works program from obtaining a child-care license or certification or from working as a caregiver. Dkt. No. 1 at 4. Although she does not say so, the plaintiff implies that she was convicted of such fraudulent activity in relation to W-2;[4] she says she was overpaid by $14.31 but paid in full on July 11, 2011.

---

[4] If one runs the plaintiff's name through the Wisconsin Circuit Court Access web site, one cannot find a criminal prosecution against anyone named Elouise Bradley. https://wcca.wicourts.gov/caseSearchResults.html.

7

Id. She appears to feel that a law that says someone who has been convicted of W-2 fraud cannot run a day care or work as a caregiver is an *ex post facto* punishment and a violation of her due process rights.

Wis. Stat. §76 is titled "Taxation of Public Utilities and Insurers,"[5] so that cannot be the statute to which the plaintiff refers. Wis. Stat §48.686(4m)(a)(1), however, provides that "a licensing entity may not issue an approval to operate a child care program to a person, and a child care program may not employ or contract with a caregiver or noncaregiver employee or permit a household member to reside at the child care program if the licensing entity or child care program knows or should have known . . . [t]hat the person has been convicted of a serious crime . . . ," and Wis. Stat §48.686(c)(8) defines as a "serious crime" "[a]n offense involving fraudulent activity as a participant in the Wisconsin Works program." It appears that the plaintiff is alleging that this statute constitutes an *ex post facto* punishment against her and violates her due process rights.

Section 1983, the Ex Post Facto Clause and the Due Process Clause are federal laws and this court has subject matter jurisdiction to hear and decide claims under those laws. The defendants argue, however, that the plaintiff's claims in this case appear "to be related to certain regulatory actions taken by

---

[5] There is a 2019 Wisconsin Act 76 relating to grants to homeless shelters. https://docs.legis.wisconsin.gov/2019/related/acts/76. There is a 2017 Wisconsin Act 76 relating to the organization and operation of cooperatives and extensions of credit by electric cooperatives. https://resources.uwcc.wisc.edu/Legal/act076.pdf. Likely there have been a number of other Wisconsin Act 76 statutes.

8

DCF personnel in 2012 with respect to plaintiff's childcare business." Dkt. No. 10 at 2. They assert that the exclusive remedy for a plaintiff who wants judicial review of a state agency regulatory decision is Wis. Stat. §227. Id. They contend that under Wis. Stat. §227.52, "[a]dministrative decisions which adversely affect the substantial interests of any person . . . are subject to review as provided in this chapter" and that Wis. Stat. §227.53(1) sets out the procedure for challenging an agency decision. Id. at 11-12. The defendants assert that courts have held that this statute—Wisconsin's Administrative Procedures Act—is the plaintiff's exclusive avenue of relief, which deprives this court of subject matter jurisdiction. Id. at 12.

In Bradley I, the Seventh Circuit did not address the district court's conclusion that the plaintiff's challenge to the DFC's action in revoking her daycare license was beyond its subject matter jurisdiction. Bradley I, 528 F. Appx. at 681. Rather, it stated that the district court's conclusion "overlook[ed] a more-fundamental problem"—the fact that the DFC "is not a person subject to liability under § 1983." Id. (citations omitted).

In Bradley II, the Seventh Circuit affirmed the district court's dismissal of the plaintiff's second case because the complaint "reveal[ed] no possible non-frivolous federal question." Bradley II, 594 F. Appx. at 883 (citing 28 U.S.C. §1331, Crosby v. Cooper B-Line, Inc., 725 F.3d 795, 800 (7th Cir. 2013), cert. den., ___ U.S. ___, 134 S. Ct. 1298 (2014)). Again the Seventh Circuit did not specifically state that Wisconsin's Administrative Procedure Act was the exclusive remedy for the plaintiff's claims (although it noted that the district

9

court had held as much and that the plaintiff ignored that holding on appeal).
Id. at 882. The Seventh Circuit did not mention the issue in Bradley III or
Bradley IV because those decisions rested on claim preclusion. As far as the
court can tell, the Seventh Circuit has not directly stated that the only remedy
for the plaintiff is the Wisconsin APA.

The defendants argue that the Wisconsin Court of Appeals has held that
the state APA is the exclusive remedy for someone aggrieved by a state agency
decision, pointing to Turkow v. Wis. Dep't of Nat. Resources, 216 Wis.2d 273,
282-83 (Ct. App. 1998). That appears to be true. In Turkow, the defendant
state agency argued that the relief the plaintiff sought was improper because it
"improperly bypass[ed] the exclusive means of administrative review provided
by the legislature"—Wis. Stat §227. Id. at 281. The court of appeals agreed. Id.

Whether the fact that the Wisconsin Court of Appeals has held that the
Wisconsin APA is the exclusive remedy for a plaintiff aggrieved by the decision
of a Wisconsin administrative agency deprives this court of subject matter
jurisdiction is a complex question. Because the plaintiff has not stated a claim
upon which relief can be granted, the court will assume without deciding that
the plaintiff has alleged violations of federal law and thus that the court has
subject matter jurisdiction.

B.     Failure to State a Claim

1.     *Legal Standard*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)
challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P.

10

12(b)(6); Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). When evaluating a motion to dismiss under Rule 12(b)(6), the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. AnchorBank, FSB v. Hofer, 649 F.3d 610, 614 (7th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In this context, "plausible," as opposed to "merely conceivable or speculative," means that the plaintiff must include "enough details about the subject-matter of the case to present a story that holds together." Carlson v. CSX Transp., Inc., 758 F.3d 819, 826-27 (7th Cir. 2014) (quoting Swanson v. Citibank, N.A., 614 F.3d 400, 404-05 (7th Cir. 2010)). "[T]he proper question to ask is still could these things have happened, not did they happen." Id. at 827 (internal quotation and citation omitted). The plaintiff "need not 'show' anything to survive a motion under Rule 12(b)(6)—he need only allege." Brown v. Budz, 398 F.3d 904, 914 (7th Cir. 2005).

      2.   *Analysis*

        a.   Wisconsin DCF

The Seventh Circuit and district courts have told the plaintiff that the DCF is not a suable entity under §1983 because it is an agency of the state of Wisconsin. Bradley I, 528 F. Appx. at 681 ("the Department is not a person

11

subject to liability under § 1983."). It was true when those courts said it. It remains true now. The court will dismiss the DCF as a defendant.

b. Statute of Limitations

The defendants argue that the plaintiff's claims are time-barred. Dkt. No. 10 at 4. The complaint discusses events that occurred in 2011 and 2012, with the latest date mentioned being August 11, 2012—the date on which the plaintiff claims that defendant Jennifer Sabree emailed defendants Jane Abshire and Cinda K. Stricker the "fabrication" that the plaintiff voluntarily closed her daycare. Dkt. No. 1 at 3. The plaintiff filed this suit on April 24, 2020—seven years, eight months and twelve days later.

Federal courts considering §1983 claims "should borrow the general or residual statute for personal injury actions" from state law. Owens v. Okure, 488 U.S. 235, 249-50 (1989). In Wisconsin, that statute is Wis. Stat. §893.53, which at the time of the events the plaintiff mentions in the complaint provided a six-year limitation period. https://docs.legis.wisconsin.gov/2017/related/acts/235.[6] The plaintiff did not file this lawsuit within six years of August 11, 2012.

If the court is correct, however, that the plaintiff is claiming that the Wisconsin statute barring people from operating child care programs or working as childcare givers if they have been convicted of W-2 fraud violates

_____

[6] On April 4, 2018, an amendment became effective changing the limitation period to three years. https://docs.legis.wisconsin.gov/2017/related/acts/235.

12

the Ex Post Facto and the Due Process Clauses, the question for statute of limitations purposes is when that statute went into effect. Wis. Stat §48.686 was enacted by 2017 Wisconsin Act 59 on September 21, 2017. https://docs.legis.wisconsin.gov/2017/related/acts/59. As of that date, if the plaintiff had been convicted of W-2 fraud, she would have been banned from operating or working at a childcare program. The plaintiff brought this lawsuit two years and seven months after enactment of Wis. Stat. §48.686. Assuming the plaintiff is arguing that Wis. Stat. §48.686 violates the Ex Post Facto Clause, the complaint is not time-barred.[7]

c.    Claim Preclusion

The defendants assert that as best they can tell, the complaint raises the same issues the plaintiff raised, and courts decided, in her prior four cases, and they argued that this means her claims are "precluded." Dkt. No. 10 at 5-6. "Claim preclusion applies to matters previously resolved as well as to issues or theories that could have been raised but were not." Ware v. Ill. Dep't of Corrections, 827 F. Appx. 579, 581 (7th Cir. 2020) (citations omitted). The Seventh Circuit has held that "'[c]laim preclusion under federal law has three ingredients: a final decision in the first suit; a dispute arising from the same transaction (identified by its operative facts); and the same litigants (directly or through privity of interest).'" Id. (quoting United States ex rel. Lusby v. Rolls-Royce Corp., 570 F.3d 849, 851 (7th Cir. 2009)).

---

[7] If, as the defendants believe, this complaint does nothing more than recast the claims from the prior four cases, the complaint is time-barred.

13

There have been four final decisions in cases the plaintiff has filed. Elouise Bradley was the plaintiff in all four. The Wisconsin Department of Children and Families was a defendant in two of the four; Jennifer Sabree, Jane Abshire and Rebecca McFadden were defendants in three of the four. While there were other defendants in three of the prior four cases that are not named in this case, "[t]he purpose of the defense of claim preclusion is to prevent parties from relitigating claims against those whom they previously sued," so "the presence of additional defendants in the earlier lawsuit is irrelevant." Id. at 581. The prior suits did not name Mustefa Sabree or Cinda Stricker, but the defendants assert that these defendants are in privity with the others. Dkt. No. 10 at 6 n.5.

If the court is right about what the plaintiff is alleging in this case, however, the dispute in this case does not arise out of the same operative facts as the prior suits. The prior suits were challenges to the DCF's actions that led to the loss of the plaintiff's license to run her daycare. This suit appears to challenge the Wisconsin law that imposes a permanent ban against operating or working in childcare programs against people who have been convicted of W-2 fraud. Because this suit does not involve the same transaction or operative facts as the prior suits, there is no claim preclusion.

d.      Issue Preclusion

The defendants also argue issue preclusion. Dkt. No. 10 at 7. "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit involving a party to the prior

14

litigation." <u>Easley v. Reuss</u>, 247 F. Appx. 823, 826 (7th Cir. 2007) (citing <u>Harrell v. U.S. Postal Serv.</u>, 445 F.3d 913, 921 (7th Cir. 2006)). Issue preclusion has four elements: "(1) the issue is the same as one involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was necessary to the prior judgment; and (4) the party against whom preclusion is involved was fully represented in the prior action." <u>Id.</u> at 826-27 (citing <u>Was. Group Int'l, Inc v. Bell, Boyd, & Lloyd LLC</u>, 383 F.3d 633, 636 (7th Cir. 2004)).

If the court is right about the plaintiff's claim in this suit, it is not barred by issue preclusion because the plaintiff did not raise this claim—the question of whether Wis. Stat. §48.686 violates the Ex Post Facto and Due Process Clauses—in the prior suits.

> e.      Rules (8) and 12(b)(6)

The defendant argues that the court must dismiss the complaint because it does not comply with the requirements of Fed. R. Civ. P. 8 and because it does not state a claim under Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 8(a)(2) says that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The plaintiff's complaint is not particularly lengthy but it is far from "plain." The court has qualified its reasoning more than once by stating, "If the court is right about what the plaintiff is claiming . . . ." That is because the court has no confidence that it is right about what the plaintiff is claiming. The complaint refers to events that occurred in 2011 and 2012, and to events that the plaintiff

15

described and complained about in the four prior lawsuits. But it also mentions—at the very end, in the prayer for relief—the law prohibiting someone who has been convicted of W-2 fraud from operating or working at a childcare program, and it mentions in the same breath the Ex Post Facto Clause, due process and the Fourteenth Amendment.

If the plaintiff is trying to raise the same claims she raised in the prior four lawsuits, the complaint is missing many of the facts she alleged in those prior lawsuits. If, as the court has speculated, the plaintiff is trying to challenge Wis. Stat §48.636 as applied to her as an *ex post facto* law, the complaint is missing even more fact. For example, the complaint does not allege that the plaintiff has been convicted of W-2 fraud (and the court can't find any evidence of such a conviction in the state court's electronic docket). If she has such a conviction, the complaint does not explain when it occurred. The complaint does not explain whether the plaintiff has tried to obtain approval to run a childcare program or tried to get a job working in one, or what happened if she did.

Often when a complaint does not comply with Fed. R. Civ. P. 8, courts will give a plaintiff the opportunity to amend under Fed. R. Civ. P. 15. But while Rule 15(a)(2) encourages courts to "freely give leave" to amend "when justice so requires," the Seventh Circuit has held that "district courts have broad discretion to deny leave to amend" when amending would be futile. Hukic v. Aurora Loan Serv., 588 F.3d 420, 432 (7th Cir. 2009) (quoting Arreola v. Godinez, 546 F.3d 788, 796 (7th Cir. 2008)).

It would be futile for the court to allow the plaintiff to amend the complaint, because she could not state a claim for violation of the Ex Post Facto or Due Process Clauses. "The *Ex Post Facto* Clause is violated by state or federal legislation that 'makes an act done before the passing of the law, and which was innocent when done, criminal, and punishes such action.'" Sweeney v. Pence, 767 F.3d 654, 667 (7th Cir. 2014) (quoting Peugh v. United States, 569 U.S. 530, 538 (2013)). To violate the Ex Post Facto Clause, a law must "punish past conduct." Id. Put another way, the Clause "prohibits the states from passing any law that retroactively alters the definition of a crime or increases the punishment for a criminal act." Lieberman v. Scott, No. 13 C 8599, 2014 WL 2832834, at *5 (N.D. Ill. 2014) (citing Collins v. Youngblood, 497 U.S. 37, 43 (1990)). "Only penal statutes may implicate federal ex post facto protection." Id. (citing Kansas v. Hendricks, 521 U.S. 346, 370 (1997)). "Thus, the constitutional principles prohibiting ex post facto laws apply only to criminal proceedings." Id.

"A civil sanction . . . will implicate *ex post facto* concerns only if it can be fairly characterized as punishment." Bae v. Shalala, 44 F.3d 489, 492 (7th Cir. 1995). To make this determination, a court must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." Smith v. Doe, 538 U.S. 84, 92 (2003) (quoting Hendricks, 521 U.S. at 361).

> If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, [the court] must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Ibid.* (quoting *United States v. Ward*, 448 U.S. 242, 248-249 .

17

. . (1980)). Because [the court] "ordinarily defer[s] to the legislature's stated intent," *Hendricks*, *supra*, at 361 . . . , "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Hudson v. United States*, 522 U.S. 93, 100 . . . (1997) . . . .

Id.

Wis. Stat. §48.686 is not a penal statute. It is part of a civil licensing statute. It is a provision of the subchapter of the Children's Code that sets licensing procedures and requirements for child welfare agencies, foster homes, group homes, child care centers and county departments. It is not an additional punishment for the offense of W-2 fraud. See United States v. Meadows, 772 F. Appx. 368, 369 (7th Cir. 2019). Because Wis. Stat. §48.636 is a civil statute and does not impose punishment, the complaint does not state a claim for violation of the Ex Post Facto Clause and allowing the plaintiff to amend her complaint to provide additional facts would not change that.

After the defendants filed their motion to dismiss, the plaintiff filed a document titled "Notice and Motion for a Hearing and Order to Show Cause,, Plaintiffs Reply Brief in Support in Opposition to Defendants Motion to Dismiss Defendants." Dkt. No. 12. This appears to be the plaintiff's brief in opposition to the motion to dismiss. While much of it is cut and pasted from prior filings, the plaintiff cites a case and says that the same thing that happened to the plaintiff in that case will happen to the plaintiff if the "defendant don't clear [the plaintiff's] name as a Child Care Fraud." Id. at 6. The plaintiff appears to reference Brister v. Wis. Dep't of Children and Families, 352 Wis.2d 247 (Ct. App. 2013). Plaintiff Jacqueline Brister was fired as a van driver at Penfield

18

Children's Center after the DCF advised the Center of a possible failure to fully investigate her background check results. Id. at *1. The Penfield Children's Center determined that Brister's conviction for "public assistance fraud" over thirty years earlier barred her from working as a caregiver under Wis. Stat. §48.685(5).[8] Id. Brister sought declaratory judgment that the statute did not apply to her or that it was unconstitutional. Id. The Wisconsin Court of Appeals dismissed the appeal as moot because the DCF never had applied §48.685 to her, and had told her that it would not object to "any employer's finding that the statute does not apply to her given the absence of any records regarding her conviction." Id. at *2.

The plaintiff's argument and her citation of Brister imply that she wants the DCF to "clear her name" of a charge of "child care fraud." This is a completely different claim than the claim the plaintiff appears to make in the complaint. If the plaintiff has a criminal conviction for fraud—whether it is W-2 fraud or "child care" fraud—neither the DCF nor the individual defendants have the power to "clear" her name. To rid herself of a criminal conviction, the plaintiff would have to attack the criminal conviction in the court where it occurred, either through an appeal, a collateral attack or perhaps expungement or pardon.

Nor can the court perceive how the plaintiff's fraud conviction—if she has a fraud conviction—and the result it may have on her ability to run or be

---

[8] This statute prohibits persons with various types of convictions from working in certain state-regulated facilities.

employed by a childcare program implicates the due process clause of the Fourteenth Amendment. The plaintiff does not identify the property of which she was deprived. She does not say how the DCF deprived her of any property right, or what process she believes she was due. If the plaintiff is alleging that the passage of Wis. Stat. §48.686 deprived her of a "right" to operate a childcare program or work as a childcare giver, she has not identified the source of that right, and she has sued the wrong defendants. The Wisconsin Legislature, not the DCF, passed the statute.

The complaint does not state a claim for which this court can grant relief, so the court must grant the motion to dismiss under Rule 12(b)(6).

**IV**.    **Conclusion**

The court **DENIES** the plaintiff's Motion for a Hearing and Order to Show Cause. Dkt. No. 12.

The court **GRANTS** the defendants' motion to dismiss. Dkt. No. 9.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 18th day of December, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

21